1

2

3

4

5

6

7

O

8

9

10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

11

ALEX TAHMAS,                    ) Case No. EDCV 14-1837 RNB
                                )
12                    Plaintiff, )
                                )
13          vs.                  ) ORDER REVERSING DECISION OF
                                ) COMMISSIONER AND REMANDING
14 CAROLYN COLVIN, Acting        ) FOR FURTHER ADMINISTRATIVE
   Commissioner of Social Security, ) PROCEEDINGS
15                                )
                                )
16                   Defendant.  )
                                )
17 _____ )

18        Plaintiff filed a Complaint herein on September 4, 2014, seeking review of the

19 Commissioner's denial of his application for a period of disability and Disability

20 Insurance Benefits.  In accordance with the Court's Case Management Order, the

21 parties filed a Joint Stipulation ("Jt Stip") on May 13, 2015.  Thus, this matter now

22 is ready for decision.[1]

23

24

25        [1]        As the Court advised the parties in its Case Management Order, the

26 decision in this case is being made on the basis of the pleadings, the administrative

27 record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule

28 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party

   is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

      1.    Whether the Administrative Law Judge ("ALJ") made a proper residual functional capacity ("RFC") determination and posed a complete hypothetical question to the vocational expert.

      2.    Whether the ALJ properly considered the opinions of four treating physicians.

      3.    Whether the ALJ made a proper adverse credibility determination.

**DISCUSSION**

As discussed hereafter, the Court concurs with the Commissioner that reversal is not warranted based on the ALJ's alleged failure to properly consider the treating physicians' opinions. However, the Court concurs with plaintiff that the ALJ failed to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony. As a result of the Court's finding with respect to the latter issue, it is unnecessary for the Court to reach the issue of whether the ALJ made a proper RFC determination or posed a complete hypothetical question to the vocational expert.

**A.**    **Reversal is not warranted based on the ALJ's alleged failure to properly consider the treating physicians' opinions (Disputed Issue Two).**

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the

2

1   ultimate issue of disability." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.

2   1989).  The weight given a treating physician's opinion depends on whether it is

3   supported by sufficient medical data and is consistent with other evidence in the

4   record.  <u>See</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's

5   opinion is uncontroverted by another doctor, it may be rejected only for "clear and

6   convincing" reasons.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996); <u>Baxter</u>

7   <u>v. Sullivan</u>, 923 F.3d 1391, 1396 (9th Cir. 1991).  Where, as here, the treating

8   physicians' opinions are controverted, it may be rejected only if the ALJ makes

9   findings setting forth specific and legitimate reasons that are based on the substantial

10  evidence of record.  <u>See, e.g.</u>, <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)

11  ("A treating physician's opinion on disability, even if controverted, can be rejected

12  only with specific and legitimate reasons supported by substantial evidence in the

13  record."); <u>Magallanes</u>, 881 F.2d at 751; <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th

14  Cir. 1987).

15      Disputed Issue Two is directed to the ALJ's consideration of the opinions of

16  four treating physicians: Dr. Lee, Dr. Singh, Dr. Chen, and Dr. Feng.  (<u>See</u> Jt Stip at

17  9-26.)  As discussed hereafter, the Court finds that reversal is not warranted based on

18  the ALJ's alleged failure to properly consider these opinions.

19

20      <u>Dr. Lee</u>

21      Dr. Lee performed a "table tilt" test to determine the source of plaintiff's

22  dizziness.  Based on a positive result on the test, Dr. Lee diagnosed plaintiff with

23  neurocardiogenic syncope.  Dr. Lee therefore recommended that plaintiff should

24  "avoid long standing, sitting, quick position changes and triggers," "sit or lie back

25  down to avoid or abort an episode," "stay well-hydrated," and "wear graded

26  compressive elastic stockings."  (<u>See</u> AR 399-400.)

27      The ALJ accorded "good weight" to Dr. Lee's recommendations, to the extent

28  the recommendations were work-related, and incorporated them in her residual

3

functional capacity ("RFC") determination for light work with additional limitations. (See AR 18.)[2]   Plaintiff contends that the ALJ's RFC determination did not adequately account for Dr. Lee's opinion for two reasons, both of which the Court rejects.

First, plaintiff contends that the ALJ's RFC determination did not account for the "vertigo and syncope episodes" described by Dr. Lee.  (See Jt Stip 12.)  But plaintiff is merely identifying conditions or symptoms without identifying any work-related limitations that Dr. Lee proposed and that the ALJ failed to properly consider. Indeed, Dr. Lee's recommendations as to plaintiff's work-related limitations (i.e., that plaintiff avoid long standing, sitting, and quick position changes and that plaintiff sit or lie down to avoid or abort a dizziness episode) were consistent with several parts of the ALJ's determination, including: a limitation to standing and/or walking for two hours in an eight-hour workday; a limitation to occasional bending, kneeling, stooping, crouching, or crawling; a preclusion from climbing ladders, ropes, or scaffolds; a preclusion from balancing or working at unprotected heights; a preclusion from work around moving or dangerous machinery; and a preclusion from operating motorized vehicles.  (See AR 14.)  Plaintiff does not explain how these limitations credited by the ALJ were inadequate to address the vertigo and syncope episodes identified by Dr. Lee.

Second, plaintiff contends that the ALJ's RFC determination did not account

_____

[2]     The ALJ's full RFC determination was as follows (see AR 14): *[Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: lift/or carry 10 pounds frequently, 20 pounds occasionally; stand and/or walk 2 hours out of an 8-hour day; sit 6 hours out of an 8-hour day; occasionally bend, kneel, stoop, crouch, or crawl; can occasionally climb stairs, but cannot climb ladders, ropes, or scaffolds; no jobs requiring balancing or work at unprotected heights; no work around moving or dangerous machinery; and no operating motorized vehicles.*

1   for Dr. Lee's recommendation that plaintiff "lie back down" to avoid or abort a
2   dizziness episode. (<u>See</u> Jt Stip at 13.)  But Dr. Lee stated that plaintiff could lie back
3   down *or* sit down to avoid or abort a dizziness episode. (<u>See</u> AR 400.)  Dr. Lee's
4   alternative recommendation that plaintiff could sit down was not inconsistent with the
5   ALJ's RFC determination.

6

7       <u>Dr. Singh</u>
8       The ALJ separately considered two different types of opinions issued by Dr.
9   Singh. (<u>See</u> AR 17.)

10      The first type of opinion completed by Dr. Singh consisted of reports that
11  plaintiff would be "off work" for two slightly overlapping periods: (1) June 4, 2012
12  to November 30, 2012; and (2) October 31, 2012 to May 1, 2013. (<u>See</u> AR 626, 646.)
13  The ALJ gave "no weight" to these reports because neither of them "gave an opinion
14  for a period that lasts twelve months in duration" and because even when the reports
15  were added together, "they still do not combine for a full twelve-month period." (<u>See</u>
16  AR 17.)  The Court finds that this was a legally sufficient reason on which the ALJ
17  could properly rely to accord no weight to Dr. Singh's "off work" reports. <u>See, e.g.</u>,
18  <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1459 (9th Cir.
19  1995) (claimants must establish disability for a continuous period of not less than 12
20  months) (citing 42 U.S.C. § 423(d)(1)(A)).

21      The second type of opinion completed by Dr. Singh consisted of two opinions
22  – issued in March 2011 and in January 2012 – about plaintiff's limitations from his
23  dizziness. (<u>See</u> AR 620-22, 647-48.)  In the March 2011 opinion, Dr. Singh opined
24  that plaintiff could not stoop or perform similar postural activities, but he nonetheless
25  could perform each of the activities of sitting, standing, and walking on a "frequent"
26  basis (which the questionnaire had defined as lasting 2.5 to 5.5 hours per day); but
27  Dr. Singh also concluded that plaintiff could perform "no work." (<u>See</u> AR 648.)  In
28  the January 2012 opinion, Dr. Singh opined that plaintiff should be limited to three

1  hours of sitting, one hour of standing, and one hour of walking during an eight-hour
2  workday. (See AR 620.)

3       The ALJ gave "no weight" to Dr. Singh's March 2011 and January 2012
4  opinions for two reasons. (See AR 17.) First, the ALJ determined that Dr. Singh's
5  March 2011 opinion was "internally inconsistent" because plaintiff's purported
6  inability to stoop was inconsistent with his ability to sit, and also because Dr. Singh's
7  conclusion that plaintiff cannot perform any work was inconsistent with his findings
8  that plaintiff can sit, stand, and walk frequently. (See id.) The Court concurs with
9  the latter point: Dr. Singh's conclusion in his March 2011 opinion that plaintiff can
10 perform no work was inconsistent with his finding in the same opinion that plaintiff
11 had the functional ability to sit, stand, and walk at a level equivalent to a range of
12 sedentary work or even a range of light work. See 20 C.F.R. §§ 404.1567(a)
13 (defining sedentary work as work involving lifting no more than 10 pounds at a time
14 and sitting with a certain amount of walking and standing); and 404.1567(b)
15 (commenting about light work that even if "the weight lifted may be very little, a job
16 is in this category when it requires a good deal of walking or standing, or when it
17 involves sitting most of the time with some pushing and pulling of arm or leg
18 controls"). Indeed, Dr. Singh's opinion that plaintiff could stand and walk
19 "frequently" was less restrictive than the ALJ's own residual functional capacity
20 determination, which limited plaintiff to two hours of standing and/or walking in an
21 eight-hour workday. (See AR 14.) Accordingly, the Court finds that this was a
22 legally sufficient reason on which the ALJ could properly rely to accord no weight
23 to Dr. Singh's March 2011 opinion. See Morgan v. Comm'r of Social Sec. Admin.,
24 169 F.3d 595, 603 (9th Cir. 1999) (ALJ could properly reject treating medical opinion
25 that had internal inconsistencies); see also Valentine v. Commissioner Social Sec.
26 Admin., 574 F.3d 685, 692 (9th Cir. 2009) (ALJ could properly reject a treating
27 medical opinion by identifying a contradiction in that opinion); Johnson v. Shalala,
28 60 F.3d 1428, 1433 (9th Cir. 1995) (same).

1    Second, the ALJ found that Dr. Singh's March 2011 and January 2012 opinions

2    were "inconsistent with each other" because there was "no indication in the record

3    that [plaintiff's] condition worsened significantly between March 2011 and January

4    2012 to the point [plaintiff] would go from having the capability of sitting, standing,

5    and walking frequently to only being capable of standing and walking for 1 hour."

6    (See AR 17-18.)   The Court concurs with the ALJ's reasoning because medical

7    evidence for the period between March 2011 and January 2012 did not suggest that

8    plaintiff's capacity for standing and walking was deteriorating.  (See id. 607-19, 638-

9    40.)  Accordingly, the Court finds that this also was a legally sufficient reason on

10   which the ALJ could properly rely to accord no weight to Dr. Singh's March 2011

11   and January 2012 opinions.  See Young v. Heckler, 803 F.2d 963, 967, 968 (9th Cir.

12   1986) (treating physician's latest opinion was properly rejected where it contradicted

13   earlier medical reports, including those of physician himself, and where the record

14   was far from clear that claimant's condition was progressively deteriorating);

15   Morgan, 169 F.3d 595 (ALJ could properly reject treating medical reports based on

16   inconsistencies between the reports).

17

18       Dr. Chen and Dr. Feng

19       Plaintiff collectively challenges the ALJ's consideration of the opinions of Dr.

20   Chen and Dr. Feng, to which the ALJ accorded no weight for similar reasons.  (See

21   Jt Stip at 14-15.)

22       Dr. Chen issued two opinions in which he stated that (1) plaintiff was "totally

23   disabled" from May 5, 2010 to February 16, 2011; and (2) plaintiff was "off work"

24   from September 1, 2010 to February 15, 2011.  (See AR 452-53, 649.)  Dr. Feng

25   issued an opinion in which he similarly stated that plaintiff was "off work" for the

26   period of July 16, 2010 to August 31, 2010.  (See id. 651.)  Collectively, Dr. Chen's

27   and Dr. Feng's opinions, which overlapped, purported to establish disability for the

28   period of May 5, 2010 to February 16, 2011.

7

1    The ALJ accorded no weight to any of these three opinions by Dr. Chen and
2    Dr. Feng because none of them "deal[t] with a full twelve-month period," but instead
3    covered only a period of ten months at the longest.  (See AR 18.)  Although plaintiff
4    contends that the twelve-month threshold was met by tacking on periods of disability
5    reflected in other medical opinions (see Jt Stip at 15), plaintiff is mistaken.
6    Specifically, plaintiff cites medical evidence that purportedly reflected disability for
7    the following four periods: (1) September 1, 2010 to February 15, 2011 (see AR 649);
8    (2) June 4, 2012 to November 30, 2012 (see AR 626); (3) October 31, 2012 to May
9    1, 2013 (see AR 646); and (4) February 7, 2011 to February 7, 2012 (see AR 648).
10   The first cited period does not even extend the ten month period covered by Dr.
11   Chen's and Dr. Feng's opinions.  The second and third cited periods lend themselves
12   to a lengthy gap of non-disability between February 16, 2011 and June 4, 2012, in
13   contravention of the Commissioner's requirement that disability must last for a
14   *continuous* period of not less than 12 months.  See generally Flaten, 44 F.3d at 1460
15   (rejecting theory that a later period of disability could "relate back" to an earlier
16   period of disability).  The fourth cited period of disability was recommended by Dr.
17   Singh in his March 2011 opinion, to which the ALJ accorded no weight based on two
18   legally sufficient reasons (as the Court discussed above).  Accordingly, as with Dr.
19   Singh's "off work" reports, the Court finds that the failure of Dr. Chen's and Dr.
20   Feng's opinions to satisfy the temporal requirement of a continuous period of not less
21   than 12 months was a legally sufficient reason on which the ALJ could properly rely
22   to accord no weight to Dr. Chen's and Dr. Feng's opinions.

23

24   **B.    The ALJ failed to make a proper adverse credibility determination**
25        **(Disputed Issue Three).**

26        Disputed Issue Three is directed to the ALJ's adverse credibility determination
27   with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 26-35.)
28   //

8

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Plaintiff alleged that he was disabled because of cervicalgia and transient cerebral ischemia, which caused constant dizziness. (See AR 12, 91.) During the administrative hearing, plaintiff testified about his treatment history, symptoms, and daily activities as follows. His dizziness began sometime after he recovered from shingles in 2004, and it became gradually worse. (See id. 37-38.) His medications included Florinef, Midodrine, Simvastatin, Acyclovir, Gabapentin, Trazadone, and Atorvastatin. (See id. 15, 46-47, 180, 210, 623.) He stopped working as an insurance sales agent in May 2010, and he no longer had health insurance. (See id. 37, 54.) He had blackout episodes and experienced dizziness with every movement. (See id. 39-40.) Although his daily activities varied, a typical day involved exercising, eating a breakfast prepared by his wife, using the computer for a half hour, walking for a half or one hour, watching television for one hour, eating lunch, and reading. (See id. 59-60.) He did not help his wife with the household chores. (See id. 60-61.)

In addition to testifying at the administrative hearing, plaintiff completed an Exertion Questionnaire in which he stated that he was limited to lifting ten pounds and carrying objects weighing less than five pounds, and that he needed a cane to help

1  him with stairs.  (See AR 204, 205.)

2      The ALJ determined that, although plaintiff's medically determinable
3  impairments could reasonably be expected to cause the alleged symptoms, plaintiff's
4  statements concerning the intensity, persistence, and limiting effects of his symptoms
5  were "not entirely credible."  (See AR 15.)  In support of this adverse credibility
6  determination, the ALJ proffered two broad reasons; the ALJ also proffered one
7  reason that the ALJ found bolstered plaintiff's credibility.  (See id. 18-19.)

8      The first reason proffered by the ALJ for his adverse credibility determination
9  was that plaintiff's subjective symptom testimony was adversely affected by his
10  treatment history.  (See AR 18-19.)  Specifically, the ALJ noted that (1) plaintiff's
11  dizziness problem was never officially confirmed with an official diagnosis; and (2)
12  plaintiff was given only medications with "little to no recommendations for other
13  potentially more invasive treatment options," and "few adjustments to his treatment
14  regimen and the treatments used."  (See id.)

15      Preliminarily, the Court finds that the ALJ's reasoning that plaintiff's condition
16  was never officially confirmed with an official diagnosis is belied by the record,
17  which reflects that, while there was some initial disagreement among physicians
18  about the exact cause of plaintiff's dizziness, he was eventually diagnosed with
19  neurocardiogenic syncope after a positive "table tilt" test.  (See AR 366, 399-400.)
20  Indeed, a diagnosis of neurocardiogenic syncope was confirmed during the
21  administrative hearing by a medical expert who had reviewed plaintiff's medical
22  record.  (See AR 47.)  Moreover, evidence in the record reflected that establishing a
23  diagnosis required multiple tests – including physical examinations, an
24  electronystagmogram, a magnetic resonance image, and a table tilting test (see AR
25  328, 399-400) – which indicated that plaintiff's condition was difficult to diagnose,
26  not that he had feigned his condition.  Notably, no physician expressed doubt that
27  plaintiff had medically determinable impairment causing his dizziness.

28  //

10

1    As to the ALJ's related reasoning that plaintiff received only medications with
2    little to no recommendations for more invasive treatment options and with few
3    adjustments to his treatment regimen, the Court finds that this also did not constitute
4    a legally sufficient basis for rejecting plaintiff's subjective symptom testimony
5    because the record contains undisputed evidence that plaintiff could not afford
6    regular or specialized treatment (see AR 54, 636). See Orn v. Astrue, 495 F.3d 625,
7    638 (9th Cir. 2007) (an ALJ may not base an adverse credibility determination on a
8    claimant's failure to obtain treatment that he cannot afford); Regennitter v.
9    Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (same);
10   Smolen, 80 F.3d at 1284 (same).  Moreover, to the extent that the ALJ was implicitly
11   making a lay determination that plaintiff's treatment was conservative, the Court
12   finds that this also was not a legally sufficient basis to reject plaintiff's subjective
13   symptom testimony because no medical professional characterized plaintiff's
14   treatment as conservative or as incommensurate with plaintiff's subjective symptom
15   complaints.  See Schomas v. Colvin, 732 F.3d 702, 709 (7th Cir. 2013) (ALJ's lay
16   reasoning that treatment was conservative because claimant was not hospitalized or
17   did not visit the emergency room more frequently "impermissibly substitutes the
18   ALJ's personal observations for the considered judgment of medical professionals");
19   Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) ("The ALJ and the judge may
20   not impose their own respective notion that the severity of a physical impairment
21   directly correlates with the intrusiveness of the medical treatment ordered. . . .  A
22   circumstantial critique by non-physicians, however thorough or responsible, must be
23   overwhelmingly compelling in order to overcome a medical opinion.") (citation and
24   internal quotation marks omitted); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)
25   (ALJ's lay conclusions from the medical evidence were invalid where no medical
26   opinion in the record suggested that claimant's course of treatment was
27   incommensurate with his purported ailment); see generally Day v. Weinberger, 522
28   F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not qualified as a medical expert); cf.

11

1  Olsen v. Colvin, 551 F. App'x 868, 875 (7th Cir. 2014) (upholding ALJ's
2  characterization of claimant's treatment as conservative where at least one orthopedic
3  surgeon had described it as such).

4      The second reason proffered by the ALJ for his adverse credibility
5  determination was that plaintiff's daily activities were not fully supported by the
6  objective medical evidence of record. (See AR 19.) Specifically, the ALJ noted that
7  (1) plaintiff's limited activities were not accompanied by "evidence of significant
8  weight loss or gain or that he suffered from significant muscle weakness that would
9  be expected from the inactivity he necessarily suffers"; and (2) there was "no notable
10 change in his body habitus that would be expected from an individual who would be
11 inactive as [plaintiff] alleges he is." (See id.) As with the ALJ's reasoning above, the
12 Court again finds that this was not a legally sufficient reason to reject plaintiff's
13 subjective symptom testimony because no medical professional opined that plaintiff's
14 daily activities, which sometimes included exercise, should result in significant
15 changes in his body weight or composition; nor did any physician opine that
16 plaintiff's daily activities were incommensurate with his subjective symptom
17 complaints.

18     Finally, the ALJ found that plaintiff's work history, corroborated by his
19 earnings record, bolstered plaintiff's credibility because it was consistent with his
20 testimony that he had stopped working in May 2010. (See AR 19; see also AR 164.)
21 The Court concurs that this factor militates in favor of the credibility of plaintiff's
22 subjective symptom testimony.

23
24            **CONCLUSION AND ORDER**
25     The law is well established that the decision whether to remand for further
26 proceedings or simply to award benefits is within the discretion of the Court. See,
27 e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at
28 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted

where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court notes that plaintiff requests only remand for additional administrative proceedings.  (See Jt Stip at 35.)  Moreover, the Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the defects in the ALJ's decision.  See Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1103-07 (9th Cir. 2014) (remanding for additional administrative proceedings where the ALJ had failed to make a proper adverse credibility determination and discussing cases).

Accordingly, IT IS HEREBY ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[3]

DATED:  June 11, 2015

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[3]     It is not the Court's intent to limit the scope of the remand.

13